CARL H. OSAKI        4008-0
Attorney At Law, A Law Corporation
Town Tower #17G
225 Queen Street
Honolulu, Hawaii  96813
Telephone:  (808) 528-4666
carl@chosaki.com

Attorney for Plaintiff
KELLI KEAWE

IN THE UNITED STATED DISTRICT COURT FOR THE

DISTRICT OF HAWAII

| | | |
|---|---|---|
| KELLI KEAWE, | ) | CIVIL NO. |
| | ) | (Other Civil Action) |
| Plaintiff, | ) | |
| | ) | COMPLAINT; DEMAND FOR JURY |
| vs. | ) | TRIAL |
| | ) | |
| DEPARTMENT OF PUBLIC SAFETY, | ) | |
| STATE OF HAWAII; | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

COMPLAINT

1.   Plaintiff Kelli Keawe ("Keawe"), by and through her attorney, complains against Defendant Department of Public Safety, State of Hawaii ("PSD"), as follows:

COUNT I
(Sex Discrimination/Hostile Workplace – Title VII)

Parties

2.   At all times relevant hereto, Keawe was a resident of the State of Hawaii.

3.   Upon information and belief, at all times relevant hereto, PSD is a Hawaii governmental entity.

<u>Jurisdiction and Venue</u>

4.    This Court has jurisdiction pursuant to 28 U.S.C. § 1331, based upon Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended from time to time.  This Court has supplemental jurisdiction over the state law claims asserted.

5.    Venue is proper in this Court pursuant to 28 U.S.C. §§ 1441(a) and 1446(a) because this Court is in the district and division embracing the place where the action is pending and the transaction and occurrence underlying this action occurred.

<u>Background Facts</u>

6.    Keawe is a transgender female.

7.    From about 2000 through 2002, Keawe was employed as a Clerk III, in the Unemployment Insurance Division of the Department of Labor and Industrial Relations, State of Hawaii ("DLIR").

8.    Keawe had no issues as a transgender female while employed at the DLIR.

9.    In or about 2003, Keawe was employed as a Clerk Typist II, in the Department of Taxation, State of Hawaii ("DTax").

10.   Keawe had no issues as a transgender female while employed at the DTax.

11.   In or about 2004, Keawe interviewed with Virginia Kimberlin of the personnel office of the PSD, who set further interview dates with representatives of the Sheriff's Division and the Hawaii Paroling Authority, both of which are departments of the PSD, for a position with either the Sheriff's Division or the Hawaii Paroling Authority ("HPA").

12.   Keawe's interviewed for a position as Clerk Typist II, otherwise known as an Office Assistant III, with Frank Delarosa and two other staff members, all of whom Keawe understood to be representing the PSD, and with Colin Fukunaga and two other staff members, all of whom Keawe understood to be representing the HPA.  At the conclusion of the interview with HPA representatives, Colin Fukunaga asked Keawe to accept an offer from HPA when the personnel department contacted Keawe.

13.   After the interviews with the representatives for the PSD and HPA, Virginia Kimberlin offered Keawe a position with either PSD "Sheriffs" or HPA, and Keawe accepted the offer from HPA, which was effective as of February 1, 2005.

14.   Colin Fukunaga subsequently transferred to the Department of Human Services ("DHS") in or about 2010, where he remained until he retired in or about 2015.  When Colin Fukunaga transferred to DHS, Andrew Morgan became Keawe's supervisor at HPA, until about 2014, whereupon Corey Reincke became Keawe's supervisor at HPA.

15.  Keawe worked at HPA's offices in the AFESS Building located at 919 Ala Moana Boulevard, Honolulu, Hawaii, from 2005 through 2021, when HPA moved its offices to the Keoni Ana Building located at 1177 Alakea Street, Honolulu, Hawaii.

16.  Soon after being hired in 2005, Keawe learned through Virginia Kimberlin that Clayton Kitamori, the supervisor of the personnel department at the PSD, tried to rescind the HPA job offer, after Clayton Kitamori  learned that Keawe was a transgender female.  Upon information and belief, upon learning of Clayton Kitamori's desire to rescind the job offer to Keawe, Virginia Kimberlin reported the conduct to Arvid Hara, who was, upon information and belief, the temporary administrator for the Civil Rights Compliance Office of the PSD ("CRCO").

17.  Keawe learned that the CRCO prevented the job offer from being rescinded, because such an act would have been illegally discriminatory in the eyes of the CRCO.

18.  As originally offered, the duties of an Office Assistant III were set forth in writing in a job description.

19.  However, in or around February 2005, Keawe's access to her work computer was blocked, which resulted in Keawe not being able to access the HPA database to complete her work assignments.  Upon information and belief, Tommy Johnson, the pardon and parole administrator of HPA at the time, directed that Keawe's work computer be blocked from her full access, and a

4

password change restricted Keawe to limited access to the HPA
database.  This resulted in Keawe having to go to her co-workers
at HPA in order to access the necessary information to complete
her daily work assignments and job duties.

20.  Keawe thereafter made requests, about twice a
year, to her supervisor, the HPA branch manager, and the PSD
personnel office, requesting full access to the HPA database so
that she could do her job.  Keawe's multiple requests in this
regard were not acted upon, such that Keawe never obtained full
access to the HPA database.

21.  Keawe's job description was effectively changed so
that her duties were amended from that which was originally set
forth in writing.  Upon information and belief, Andrew Morgan,
the supervisor of HPA at the time, was the person who changed
Keawe's job description.

22.  The change to Keawe's job description resulted in
Keawe's being excluded of training and promotion opportunities,
which would otherwise have been made available to her.

23.  Soon after beginning her job at HPA, and because
she was a transgender female, Keawe was prevented from using the
female restroom in HPA and the PSD's offices in the AFEES
Building.  As a result, Keawe had to use facilities in an
unmarked handicapped restroom in the AFEES Building.  When that
facility was out of order, Keawe had to drive to a restroom at

Ala Moana Shopping Center and other State of Hawaii office
buildings, in order to use a restroom while at work.  At times,
Keawe even had to drive home to change due to an accident from
urgent need to use the restroom.

24.  In or about February or March 2010, Keawe filed a
complaint with the Equal Employment Opportunities Commission
("EEOC") regarding her inability to use the female restrooms
within the PSD AFEES Building ("Restroom Complaint").  The
Restroom Complaint resulted in a civil rights action against the
PSD and HPA filed in state court, which was settled in 2015.

25.  Keawe requested assistance from Alan Asato, PSD
Internal Investigation Officer ("IIO"), who discouraged Keawe
from pursuing full access to the necessary database which was
required for Keawe to fully perform her work assignments in order
to obtain work experience, in preparation for a possible
promotion.  Alan Asato said, "Kelli spare yourself the
embarrassment. You're going to open yourself up," referring to
why Tommy Johnson blocked Keawe's access to the HPA database.

26.  In or about March 2020, a position for Office
Assistant IV became available.  Keawe expressed interest in the
position and requested an application from Personnel.  While
Keawe filled out the written application, she rescinded it
because she was concerned that she did not meet the minimum

6

qualifications ("MQ") because of the limitations imposed on her at work.  Keawe also was fearful of the warning from Alan Asato.

27.  In or about February/March 2020, a temporary assignment for an Office Staff Supervisor position became available.  Keawe was not offered this position, and continued being by-passed with advancement opportunities, including the Office Staff Supervisor position and Secretary positions. Meanwhile, other HPA female staff were offered such positions, including those with less seniority than Keawe.

28.  Keawe has thus been continuously subjected to being singled out to her disadvantage in the work place.  In or about 2017, cameras were installed in the work place, and Keawe noticed that more cameras were pointed toward her direction than others.

29.  For the majority of 2019, Keawe's direct supervisor, Corey Reincke, started to communicate with Keawe through emails.  By 2020, all communications between Corey Reincke and Keawe was via emails, at Corey Reincke's direction. Prior to 2019, Keawe was able to orally discuss work place matters with Corey Reincke.

30.  In or about December 2019, Corey Reincke prevented Keawe from attending a union ratification meeting, despite having notice of the meeting.  Other staff members were freely able to attend the meeting.

31.   There are two females in the office, Keawe and another parole officer.  Corey Reincke would discuss matters with the other female, who would be able to walk into Corey Reincke's office at any time; but only would communicate with Keawe through emails.

32.   Corey Reincke continued to block office communications from Keawe, including internal memoranda, policy and procedure memoranda, job opportunity notices, and training notices.  Unlike other employees, Keawe was unable to access her paystubs and could not access her emails from home.

33.   On or about May 2020, Corey Reincke slammed files on Keawe's desk, while placing files into other staff members' mail trays.

34.   On or about August 25, 2020, Keawe's leave request was denied, because of notes she had made in the "comments section" of the leave form.  On or about August 27, 2020, administrator Tommy Johnson issued a memorandum preventing HPA employees from utilizing the "comments section" on the leave form.

35.   On more than one occasion, Corey Reincke slammed his office door in the presence of Keawe.  When Keawe asked him about it, he replied that the door slipped out of his hands.  Because the door slamming continued, Corey Reincke told Keawe to complain up the chain of command.  When Keawe complained to Tommy

Johnson, we surmised that the door might have an automatic closer, and when advised that this was not the case, Keawe was advised to go to HPA branch manager Kevin Rego.  Keawe informed Kevin Rego that she wanted an open discussion about her concerns about Corey Reincke, and Kevin Rego told her to file a complaint as instructed by Tommy Johnson.

36.   On or about December 18, 2020, Keawe filed a charge with the EEOC.

37.   When he learned of the EEOC complaint, Kevin Rego informed Keawe that when he stated that Keawe could file a complaint against Corey Reincke, Kevin Rego meant an internal complaint with the PSD civil rights compliance office.

38.   In or around January 2021, Keawe was placed under investigation for filing the EEOC charge in December 2020.

39.   In or about March 2021, Andrew Morgan, the administrator of HPA, ordered Keawe to pack her things and to leave the HPS offices within ten minutes.  Andrew Morgan observed Keawe while she followed his instructions, and escorted Keawe from the HPS offices soon thereafter.

40.   Keawe's psychologist, William Tsushima, Ph.D., recommended that Keawe stay away from work because of severe stress caused by the work environment at HPS.

41.   Keawe suffered from anxiety, an inability to sleep, nightmares, inability to eat, among other things, which have continued to date.

42.   In or about September 2021, John Kristofferson, the lead investigator from CRCO, informed Keawe that "no further action will be taken" and that Keawe could return to work.  Keawe submitted a workers' compensation claim for the traumatic stress she endured over the years.

43.   Keawe's treatment in the workplace and the adverse employment actions taken against her were grounded in illegal discrimination and retaliation on account of her being transgender. for the "temerity" of a 51-year old woman to dare to question Defendant's owner's view of things.

44.   Defendant's unlawful, discriminatory, and retaliatory treatment of Keawe violates the provisions of Title VII, justifying an award, among other things, of back pay, front pay, benefits, and other damages.

45.   As a result of the above described unlawful employment practices, Keawe has suffered extreme mental anguish, outrage, severe anxiety about her future and her ability to support herself, harm to her employability and earning capacity, damage to her good reputation, disruption of her personal life, and other continuing losses.

46.  By reason of the foregoing, Keawe has suffered damages in an amount to be proven.

COUNT II
(Sex and Age Discrimination – State Law)

47.  Keawe realleges and repeats paragraphs 1 through 46, above, as if fully set forth herein.

48.  Defendant's unlawful discriminatory and retaliatory treatment of Keawe violates the provisions of Chapter 378 of the Hawaii Revised Statutes.

49.  As a result, Keawe has been damaged in an amount to be proven.

COUNT III
(Retaliation)

50.  Keawe realleges and repeats paragraphs 1 through 49, above, as if fully set forth herein.

51.  Defendant owes a duty to their employees not to discriminate and retaliate against them because an employee opposes discrimination and disparate treatment, or makes a complaint about discrimination or disparate treatment in the workplace.

52.  Defendant retaliated against Keawe after she complained about the unequal, unfair and discriminatory terms and conditions of her employment by continuing with the unequal, unfair and discriminatory conditions of her employment and further, by retaliating against her for complaining about the

11

unequal, unfair and discriminatory terms and conditions of her employment.

53.   As a result of Defendant's breach of its duty to Keawe, Keawe has been damaged in an amount to be proven.

COUNT IV
(Negligent Infliction of Emotional Distress)

54.   Keawe realleges and repeats paragraphs 1 through 53 above, as if fully set forth herein.

55.   The acts and conduct of Defendant, as described above, were carried out negligently.

56.   The acts and conduct of Defendant, as described above, caused Keawe to suffer and to continue to suffer serious emotional distress.

57.   As a result, Keawe has been damaged in an amount to be proven.

COUNT V
(Intentional Infliction of Emotional Distress)

58.   Keawe realleges and repeats paragraphs 1 through 57, above, as if fully set forth herein.

59.   The acts and conduct of Defendant, as described above, were carried out maliciously and/or oppressively with the intent to cause Keawe severe mental and emotional distress, or alternatively, with a reckless disregard of the probability that such acts would cause Keawe severe mental and emotional distress.

12

60.   As a result, Keawe sustained and continues to suffer serious emotional distress, and has been damaged in an amount to be proven.

COUNT VI
(Punitive Damages)

61.   Keawe realleges and repeats paragraphs 1 through 60, above, as if fully set forth herein.

62.   The conduct of Defendant was willful, wanton and oppressive, or was carried out with such malice as to imply a spirit of mischief or callous indifference to civil obligations, or was performed with that entire want of care which would raise the presumption of a conscious indifference to consequences and warrants an imposition of punitive damages.

63.   In order to deter such conduct in the future and prevent repetition of such conduct, and to punish such conduct, Keawe requests that punitive damages be assessed against Defendant in an amount sufficient to punish and deter.

WHEREFORE, Keawe prays that judgment be entered against Defendant, as follows:

A.   That Keawe be awarded damages in an amount to be proven;

B.   For attorneys' fees and costs in an amount to be proven; and

13

      C.   For all other relief that this court may deem just and proper.

      DATED:   Honolulu, Hawaii September 28, 2022.

                      /s/ Carl H. Osaki
                      CARL H. OSAKI
                      Attorney for Plaintiff

IN THE UNITED STATED DISTRICT COURT FOR THE

DISTRICT OF HAWAII

```
KELLI KEAWE,                    )      CIVIL NO.
                                )      (Other Civil Action)
            Plaintiff,          )
                                )      DEMAND FOR JURY TRIAL
        vs.                     )
                                )
DEPARTMENT OF PUBLIC SAFETY,    )
 STATE OF HAWAII;               )
                                )
            Defendants.         )
_____)
```

<u>DEMAND FOR JURY TRIAL</u>

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff Kelli Keawe, by and through her counsel, hereby demands trial by jury on all issues so triable herein.

DATED:    Honolulu, Hawaii   September 28, 2022.

/s/ Carl H. Osaki
CARL H. OSAKI
Attorney for Plaintiff

15